*Hearing Date: April 18, 2023 at 3:00 p.m. (prevailing Eastern time)*
*Objection Deadline: April 11, 2023 at 5:00 p.m. (prevailing Eastern time)*

**JACOBS P.C.**
*Attorneys for the Debtor*
595 Madison Ave., 39 Fl.
New York, NY 10022
(212) 229-0476
Leo Jacobs
Wayne M. Greenwald

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>TCN LIBERTY MANAGEMENT INC.,<br><br>　　　　　　　　　　　　　Debtor. | Chapter 11<br><br>Case No. 22-41452 (NHL) |

## NOTICE OF DEBTOR'S MOTION FOR RECONSIDERATION

**PLEASE TAKE NOTICE** that a hearing on the debtor's motion (the "**Motion**") for reconsideration of the Order granting relief from the automatic stay and granting *in rem* relief will be held on **April 18, 2023, at 3:00 p.m. (prevailing Eastern time)** (the "**Hearing Date**") before the Honorable Nancy Hershey Lord, United States Bankruptcy Judge, United States Bankruptcy Court for the Eastern District of New York, 271-C Cadman Plaza East, Brooklyn, New York 11201-1800.

**PLEASE TAKE FURTHER NOTICE** that the hearing shall not be held in person but shall be held as a videoconference to be conducted via Zoom. Those intending to appear at the hearing must register with eCourt Appearances no later than two days prior to the hearing. The phone number or video link for the hearing will be emailed to those that register with eCourt Appearances in advance of the hearing. Instructions for registering with eCourt Appearances can be found at https://www.nyeb.uscourts.gov/node/2126. If you do not

have internet access or are otherwise unable to register with eCourt Appearances, you may call or email Judge Nancy Hershey Lord's courtroom deputy for instructions at (347) 394-1854, NHL_Hearings@nyeb.uscourts.gov.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion shall be in writing and filed with the Clerk of the Bankruptcy Court in accordance with Rule 2002-1(d) of the Local Rules for the United States Bankruptcy Court for the Eastern District of New York, and served upon: (i) Jacobs P.C., Attorneys for the Debtor, 595 Madison Avenue, 39th Fl. New York, NY 10022, Attn: Leo Jacobs, Esq.; (ii) the Office of the United States Trustee, One Bowling Green, Suite 510, New York, NY 10004, Attn: Jeremy S. Sussman, Esq.; and (iii) all other parties-in-interest who have requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure, so as to be received no later than April 11, 2023 at 5:00 p.m. (prevailing Eastern time).

Dated: New York, New York
       March 22, 2023

                          **JACOBS P.C.**
                          *Attorneys for the Debtor*

                          By: /s/ *Leo Jacobs*
                                Leo Jacobs

                          595 Madison Avenue, 39th Fl.
                          New York, NY 10022
                          (212) 229-0476
                          leo@jacobspc.com

*Hearing Date: April 18, 2023 at 3:00 p.m. (prevailing Eastern time)*
*Objection Deadline: April 11, 2023 at 5:00 p.m. (prevailing Eastern time)*

**JACOBS P.C.**
*Attorneys for the Debtor*
595 Madison Ave., 39 Fl.
New York, NY 10022
(212) 229-0476
Leo Jacobs
Wayne M. Greenwald

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>TCN LIBERTY MANAGEMENT INC.,<br><br>Debtor. | Chapter 11<br><br>Case No. 22-41452 (NHL) |

**DEBTOR'S MOTION FOR RECONSIDERATION**
**OF THIS COURT'S ORDER OF MARCH 8, 2023, PURSUANT TO**
**FED.R.BANKR.P. 9023 & 9024 WITH POINTS AND AUTHORITIES**

TCN Liberty Management Inc., the above-captioned debtor and debtor-in-possession (the "Debtor" or "TCN"), submits this motion for orders: a.) pursuant to Fed.R.Bankr.P. 9023 & 9024 and Rule 9023-1 of this Court's Local Rules granting relief from, modifying and/or amending the Courts "*Order Granting Relief From the Automatic Stay and Granting in Rem Relief* "[ECF # 65] entered on March 8, 2023. (the "Order" Annexed hereto and incorporated in as Exhibit "A"); and b.) granting such other and further relief as this Court deems proper (the "Motion").

**PRELIMINARY STATEMENT**

1.      The Debtor moves for reconsideration to refine the Court's understanding of certain factual issues with respect to which the record may not have been entirely clear or

adequately explained to the Court on previous occasions. Namely, the Motion should be granted because this Court:

    a. overlooked that TCN's proposed plan of reorganization provides for a sale of TCN's real property, thus negating a deficiency claim otherwise permitted by 11 U.S.C. § 1111(b) ("§1111(b)");

    b. erred in concluding that TCN purchased the property for $10; and

    c. erred in concluding that TCN's purchase of the property was fraudulent.

2. In light of the foregoing, and as set forth herein and in the accompanying declaration of Avraam Borukhov (the "Borukhov Declaration"), the Debtor respectfully submits that the Court should reconsider its Order granting relief from the automatic stay and *in rem* relief; and upon reconsideration, vacate the Order and enter an order denying Deutsche Bank's motion for relief from the automatic stay.

## JURISDICTION, VENUE AND STATUTORY PREDICATE

3. This Court has jurisdiction to consider this Motion as a core proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

4. Venue of these proceedings is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The statutory predicate for the relief requested herein is 11 U.S.C. § 105(a), as supplemented by Rules 9023 and 9024 of the Bankruptcy Rules and Rule 9023-1 of the Local Rules.

## FACTUAL & PROCEDURAL BACKGROUND

**TCN Buys the Property**

6. On June 19, 2019, the Debtor contracted with Pedro Rios to purchase the property located at 676 Liberty Avenue, Brooklyn, NY 11208 (the "Property") for $375,000. See Borukhov Decl., Ex. A (the "Sale Contract").

7. The Sale Contract includes a "subject-to-mortgage" clause, providing:

> This clause survives the closing of this transaction. Seller has represented to Purchaser that title will reveal a first mortgage and second mortgage that are currently in foreclosure or in arrears. Purchaser has agreed to take the property ***subject to the mortgage.*** If the purchaser purchases the property subject to the mortgage the property shall have negative equity. Purchaser has agreed to provide to seller $175,000 of the $375,000 due the seller under this contract at closing.

*See id.*, Ex. A ¶ 31 (emphasis added).

8. On July 9, 2019, the Debtor paid the initial $175,000 down payment. *See id.*, Ex. B (Copy of Cashier's Check).

**TCN Files this Case**

9. On June 22, 2022 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of title 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") in an effort to save the Property from foreclosure and propose and confirm a plan of reorganization that would allow a sale that would benefit all creditors and parties-in-interest to the estate.

10. The Debtor continues to operate its business and manage its affairs in the ordinary course as debtor-in-possession pursuant to sections 11 U.S.C. §§ 1107(a) and 1108.

11. No trustee, examiner, or creditors' committee has been appointed in this case.

12. On September 22, 2022, TCN filed a Plan of Reorganization and Disclosure Statement.

13. TCN filed an amended Plan and Disclosure Statement on February 14, 2023 (the "Plan").

14. The Plan provides for the Property's Sale.

**Motion for Stay Relief**

15. On November 14, 2022, Deutsche Bank National Trust Company, as Trustee for the Registered Holders of CBA Commercial Assets, Small Balance Commercial Mortgage Pass-Through Certificates, Series 2006-2 ("Deutsche Bank"), filed a motion seeking relief from the automatic stay pursuant to section 11 U.S.C. § 362(d)(1), (2) and (4) (the "§ 362(d) Motion") [ECF # 40].

16. TCN opposed the §362(d) Motion asserting that: (i) the Property is adequately protected from diminution in value on account of normal occupational wear and tear; (ii) TCN proposes to make adequate protection payments in the amount of any such diminution; (iii) Deutsche Bank failed to make a prima facie case to modify the automatic stay, relying on 11 U.S.C. § 362(d)(2)–(4); (iv) the Property is necessary for an effective reorganization; and (v) Deutsche Bank has failed to establish standing to seek stay relief. *See* ECF # 46 and # 60.

17. The Court heard the §362(d) Motion on February 21, 2023 (the "Hearing") and entered the Order granting the § 362(d) Motion on March 8, 2023 [ECF # 65]. A copy of the transcript from the Hearing is annexed hereto and incorporated herein as Exhibit "b" (the "Transcript").

18. The Order appears based on the Court concluding:

   a. Deutsch Bank's substantial deficiency claim prevents TCN from confirming its Plan; *See* Transcript: 12:4-13:23;

   b. TCN acquired the Property through a fraudulent transfer; *See* Transcript: 32:16-17, 23-25 & 33:1-4.

   c. TCN paid only $10 to purchase the Property. *See* Transcript: 31:21-23;

   d. Documents purportedly assigning the loan to Deutsch sufficed to provide Deutsch Bank standing. *See* Transcript: 27: 14-21 & 30:9-25.

**RELIEF UNDER FED.R.BANKR.P. 9023 & 9024**

19. Fed.R.Bankr.P. 9023 and 9024 applies Fed.R.Civ.P. 59(e) and 60 to this Case.

20. Fed.R.Civ.P. 59(e) and 60 empower this Court to amend, amplify or expand upon its initial findings as long as "the moving party can point to controlling decisions *or data* that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *See Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995) (emphasis added); *Anglo American Ins. Group, P.L.C. v. CalFed Inc.*, 940 F. Supp. 554, 557 (S.D.N.Y. 1996).

21. Although Federal Rules 59(e) and 60 may not be used by the losing party "to repeat old arguments previously considered and rejected, or to raise new legal theories that should have been raised earlier," reconsideration may be granted "to correct a clear error or prevent manifest injustice." *See Jorge Rivera Surillo & Co. v. Falconer Glass Indus., Inc.*, 37 F.3d 25, 29 (1st Cir. 1994); *ING Glob. v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 96 (2d Cir. 2014) (quoting *Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 153 (2d Cir. 2008);

*cf. In re Adelphia Bus. Sols., Inc.,* No. 02-11389 (REG), 2002 WL 31557665 (Bankr. S.D.N.Y. Oct. 15, 2002) (denying a motion for rearmament for failure to identify factual matters or decisions that the court overlooked).

22. Granting or denying a motion to amend, alter, or reconsider an order or judgment rests in the bankruptcy court's discretion. *See In re Crozier Bros., Inc.*, 60 B.R. 683, 688 (Bankr. S.D.N.Y. 1986).

23. The reasons discussed below warrant granting the Motion.

## DISCUSSION

**I. TCN SHOULD BE GRANTED RELIEF FROM THE ORDER**

**A. Deutsche Bank Cannot Block TCN's Plan's Confirmation**

24. During the Hearing, the Court recognized both parties' seeing Deutsche Bank having a substantial deficiency claim on its non-recourse clam. The Court then extrapolated that into Deutsch Bank controlling the class of general unsecured creditor under the Plan. *See* Transcript: 16:12-19. This control would result in the class of unsecured creditors voting against the Plan. That would render the Plan un-confirmable and the Property not necessary to effect a reorganization. See, 11 U.S.C. § 362(d)(2)(B).

25. However, that conclusion seems based on § 1111(b) applying to this case. It does not.

26. The Plan provides for the Property's sale.

27. § 1111(b)(1)(A) provides:

> A claim secured by a lien on property of the estate shall be allowed or disallowed under section 502 of this title the same as if the holder of such claim had recourse against the debtor on account of such claim, whether or not such holder has such recourse, unless–
>
> (i) the class of which such claim is a part elects, by at least two-thirds in amount and more than half in number of allowed claims of such class, application of paragraph (2) of this subsection; or
> (ii) such holder does not have such recourse and such property is sold under section 363 of this title or is to be sold under the plan.

11 U.S.C. § 1111(b)(1)(A).

28. § 1111(b)(1)(A) effectively, "converts secured non-recourse obligations to recourse obligations." *In re 68 W. 127 St., LLC*, 285 BR 838, 840, fn. 1 (Bankr. SDNY 2002).

29. However, there is no right of recourse if the collateral is sold under 11 U.S.C. § 363 or a Plan. *See* 11 U.S.C. § 1111(b)(1)(A)(i) and *Id.*

30. The Plan provides for the Property's sale. Therefore, Deutsch Bank will not have: a.) recourse against TCN; b.) unsecured creditor status; and c.) the ability to block TCN confirming its Plan.

31. These circumstances were not considered at the Hearing. They negate the Court's conclusion. They materially affect the Court's Decision and the Order.

32. The Property is necessary for TCN's Plan which can be confirmed, despite Deutsche Bank's antipathy.

33. This warrants granting TCN relief from the Order.

    **B.    Finding TCN's Purchase of the Property Was Fraudulent Was an Error**

34. The should Court reconsider the Order to the extent it is based upon the finding that the Debtor's purchase of the Property was a fraudulent conveyance or otherwise improper.

### C. There Was No Fraud in TCN's Purchase of the Property

35. In its decision, the Court held that held that Deutsche Bank was entitled to *in rem* relief under 11 U.S.C. § 362(d)(4) because "the filing of the petition [wa]s part of scheme to delay, hinder, or defraud creditors" and that the Debtor "filed its first petition about four months after the property was transferred to it for little to no consideration." *See* Transcript: 33:17-18 & 32:16-17.[1]

36. However, the evidence shows that TCN agreed to pay $375,000 for the Property with $175,000 paid immediately upon the closing. *See* Borukhov Declaration, Ex. A ¶ 31. This can hardly be considered a fraudulent conveyance. *See generally Geltzer v. Xaverian High School (In re Akanmu),* 502 B.R. 124, 130 (Bankr. E.D.N.Y. 2013) (holding that 'reasonably equivalent value' is not defined under the Bankruptcy Code and concluded that '[t]he consideration given in exchange for the transfer need not be mathematically equal, or a penny for penny'") (citing *Pereira v. Wells Fargo Bank, N.A. (In re Gonzalez),* 342 B.R. 165 (Bankr. S.D.N.Y. 2006).

37. The Court considered the *Bargain of Sale Deed* in concluding the consideration for the sale.

38. However, the Sale Contract, not the Deed, evidenced the party's intent and the economic reality of the transaction.

---

[1] Although the Court asked counsel at the Hearing what the consideration was for the Debtor's purchase of the Property, counsel was not aware of the exact purchase price at the time.

39. During the Hearing, counsel to Deutsche Bank also inappropriately stated that the Debtor's purchase of the Property "was a fraudulent conveyance" because it was transferred without Deutsche Bank's permission. *See* Transcript: 14:20-23.

40. However, lack of the lender's consent, in and of itself, does not render an otherwise arms-length transaction fraudulent, nor does it automatically entitle a lender to the extraordinary relief available under section 362(d) of the Bankruptcy Code. *See In re Marcano*, No. 19-11228 (JLG), 2019 Bankr. LEXIS 1891, at *12-13 (Bankr. S.D.N.Y. June 24, 2019) (citing *In re O'Farrill*, 569 B.R. at 591 ("[I]t is not easy to successfully move for relief from the automatic stay under 11 U.S.C. §362(d)(4). '[T]he language [in section 362(d)(4)] was deliberately chosen by Congress to impose a substantial burden of proof on secured creditors").

41. In *In re 68 W. 127 St., LLC*, 285 BR 838, 840 (Bankr SDNY 2002), a similar transaction was found to be not problematic:

> Ms. Moore had sold the building to the Debtor shortly before the scheduled foreclosure sale, without BONY's knowledge. Parties facing foreclosure sometimes make such transfers to related entities in a not very subtle attempt to facilitate their control of property by muddying title. The Debtor's principals are not related to or affiliated with Ms. Moore, however, and the July 2, 2002 transfer to the Debtor does not appear to have been undertaken to shield Ms. Moore or her other assets or otherwise to harm BONY. Ms. Moore's note to BONY is full recourse, and the assignment did not relieve her of any liability. BONY nevertheless has taken no action to collect from Ms. Moore, and BONY acknowledged that it was not prejudiced by her transfer to the Debtor, or by the Debtor's day-of-foreclosure filing, for that matter, with the exception of the resulting delay imposed by the automatic stay and the cost of seeking relief under section 362(d) of the Bankruptcy Code. BONY acknowledged that had the building not been transferred, it is likely that Ms. Moore also could have filed a bankruptcy petition that would have stayed the foreclosure sale.

42. The Debtor submits that, in light of the value of the Property at the time of the transfer, the Debtor's purchase of the Property was not a fraudulent conveyance.

### D. There is No Relation Between Mr. Rios and TCN's Principal

43. The Court's inquiry about the relationship between Mr. Rios and the Debtor's principal, Mr. Borukhov, was also left unanswered. *See* Transcript: 28:25 & 29:1-21.

44. The Court's inquiry is understood, as courts have distinguished cases where a debtor seeks to benefit from its lack of privity after a transfer of the property on this basis. *See In re Curinton,* 300 B.R. 78, 86 (Bankr. M.D. Fla. 2003) ("The Court clearly can envision scenarios where a debtor obtains an interest to property and attempts to restructure the mortgage debt encumbering the property in bad faith. Perhaps family members repeatedly transfer title to mortgaged property between them and then file successive bankruptcy cases to delay foreclosure actions and with no intent or ability to pay the legitimate debt.").

45. In *In re Curinton*, the bankruptcy court held that, "in order to consistently serve both equity and public policy, each court must make a case-by-case determination regarding a debtor's motivation for filing" [and that] [a]dopting a policy of universal exclusion of *in rem* claims fails to serve honest debtors who have fallen behind in payments." *See id.* (discussing cases and distinguishing *Kizelnik* –where property was transferred to mortgagor's granddaughter and where the court found that the debtor's sole purpose for filing the petition was to prevent a fourth scheduled foreclosure, from good faith attempts to restructure the mortgage debt).

46. Here, as set forth in the Borukhov Declaration, there is no relation between the Debtor's principal and Mr. Rios. *See* Borukhov Decl. ¶ 8; *contra In re Kizelnik*, 190

B.R. 171, 179 (Bankr.S.D.N.Y.1995) (transfer to mortgagor's granddaughter); *In re Siskin*, 231 B.R. 514, 519 (Bankr.E.D.N.Y.1999) (holding that non-debtor spouse lacked standing to assert a claim under section 362(h) for violation of the automatic stay); *In re Lazerow*, 119 B.R. 74, 77 (Bankr.D.Md.1990) (noting that automatic stay did not preclude creditor from pursuing collection from debtor's wife), *aff'd*, 139 B.R. 802 (D.Md.1992).

47.     Moreover, TCN's bankruptcy filings were legitimate attempts to invoke the protections of the automatic stay, and not an "endeavor to utilize a bankruptcy case to delay the legitimate efforts of creditors" as needed for a finding of bad faith. *See Curinton* at 87; *see also In re Cohoes Industrial Terminal Inc.,* 931 F.2d 222 (2d Cir. 1991) ("Indeed, because a major purpose behind our bankruptcy laws is to afford a debtor some breathing room from creditors, it is almost inevitable that creditors will, in some sense, be frustrated when their debtor files a bankruptcy petition."); *In re 68 West 127th Street LLC*, 285 BR. 838, 846 (Bankr. S.D.N.Y. 2002) ("the exercise of a statutory right or remedy should rarely, if ever, be said to be in bad faith.") (emphasizing that the relevant inquiry be the permissible uses of the Bankruptcy Code to avoid the risk that a legitimate reorganizational purpose be taken out of context).

### E.     The Court Erroneously Considered the Loan Assignment Documents

48.     In its Decision, the Court found that, "the documents appear to show proper standing" to bring the Stay Relief Motion, "based upon the fact that it's [allonage is] endorsed in blank" and "and signed by the executive vice president of CBAC Funding."  *See* Transcript 30:9-10 & 20: 12-25.

49. The Court should reconsider the Order to the extent it was premised upon a finding that mere possession of the promissory note is sufficient to establish standing to move for stay relief, when there is no evidence that the note was properly assigned to Deutsche Bank.

50. Courts have held that, in this context, "the evidence necessary to establish standing to seek stay relief to commence or continue a foreclosure action should include a demonstration that the movant has the right under applicable state law to enforce the mortgage." *See In re Escobar*, 457 B.R. 229, 390 (Bankr. E.D.N.Y. 2011).

51. Under New York law, "[a] plaintiff has standing in a mortgage foreclosure action when it is the holder or assignee of the underlying note at the time the action is commenced." *See Aurora Loan Servs., LLC v. Taylor,* 25 N.Y.3d 355, 361, 12 N.Y.S.3d 612, 34 N.E.3d 363 [2015].

52. "Either a written assignment of the underlying note or the physical delivery of the note prior to the commencement of the foreclosure action is sufficient to transfer the obligation, and the mortgage passes with the debt as an inseparable incident." *U.S. Bank, N.A. v. Collymore*, 68 A.D.3d 752, 754, 890 N.Y.S.2d 578 [2009]; *HSBC Bank USA, N.A. v. Bermudez,* 175 A.D.3d 667, 668, 107 N.Y.S.3d 138 (2d Dept. 2018).

53. However, when the allonge is insufficient or the note is neither endorsed in blank nor specially endorsed to the plaintiff, ***mere physical possession*** of a note at the commencement of a foreclosure action ***is insufficient*** to confer standing or to make a plaintiff the lawful holder of a negotiable instrument for the purposes of enforcing the note. *Marine U.S. Bank N.A. v. Moulton,* 179 A.D.3d at 737, 116 N.Y.S.3d 86 (emphasis added); *McCormack v. Maloney,* 160 A.D.3d at 1099-1100, 75 N.Y.S.3d 294 (same).

54. In *Aurora Loan Servs v. Weisbaum*, the court held that the lender lacked standing to commence the foreclosure action because it failed to produce evidence of its predecessor-in-interest's authority to assign the note. *See Aurora Loan Servs v. Weisbaum*, 85 A.D.3d 95, 108-9 (N.Y. App. Div. 2011); *see also LPP* Mortg*. Ltd. v. Sabine Props., LLC,* 2010 NY Slip Op 32367(U), ¶ 6 (Sup. Ct.) ("Here, there are no allegations or evidence that MERS was the owner of the note such that it could assign it to LPP. Thus, the assignment from MERS was insufficient to confer ownership of the note to LPP and it has no standing to bring this action.").

55. That court opined that:

> Although Aurora's vice-president averred in conclusory fashion that Aurora became holder of the mortgage which is the subject of the action by delivery without a written assignment […] there is nothing in this document to establish the authority of MERS to assign the first note.

*See Weisbaum*, 108-9 (citing *LPP Mtge. Ltd. v Sabine Props., LLC,* 2010 NY Slip Op 32367[U]; *OneWest Bank, F.S.B. v. Drayton*, 29 Misc 3d 1021, 1038-1041; *Bank of Bank of N.Y. v Alderazi*, 2012 NY Slip Op 06906 [99 AD3d 837]; *cf. Mortgage Elec. Registration Sys., Inc. v Coakley*, 41 AD3d 674, 674-675).

56. Here, as the Court acknowledged, the allonge that was initially endorsed in blank assigned a note that Pedro Rios purportedly executed in favor of CBAC. *See* Transcript 20:21-24; Proof of Claim No. 3-1, Exhibit 6, pages 7-8.

57. Deutsche Bank has not produced this note or shown that such note is secured by the mortgage Deutsche Bank evidenced, which secured a note executed by Pedro Rios in favor of Schooner Private Funding Corp. d/b/a Schooner Commercial Funding ("Schooner"). *See* Proof of Claim No. 3-1, Exhibit 5.

58. Under New York law, "if a foreclosing entity's holder rights are not evidenced on the face of their note […] the foreclosing party must offer extrinsic evidence to prove that the entity from whom they actually received the note actually owned it." *See Hilton v. U.S. Bank (In re Hilton)*, 544 B.R. 1 n. 11 (Bankr. N.D.N.Y. 2016); *U.S. Bank Natl. Assn. v. Steinberg*, 42 Misc. 3d 1201(A), 984 N.Y.S.2d 635 (Sup. Ct. Kings. Cty. 2013) ("A party cannot prove prima facie standing to foreclose by claiming mere possession of a note, since UCC 'holder' status and standing to foreclose is premised on negotiation by means of the lender's (or prior note holder's indorsement and physical delivery of the negotiable instrument.") (emphasis in the original); *see also* Official Uniform Comment 8 to NY U.C.C. § 3-201 ("[T]he transferee without indorsement of an order instrument is not a holder and so is not aided by the presumption that he is entitled to recover on the instrument provided in Section 3-307(2). The terms of the obligation do not run to him, and he must account for his possession of the unendorsed paper by proving the transaction through which he acquired it.").

59. Having failed to produce any evidence that CBAC owned the note referenced in the allonge, Deutsche Bank has not established that it has standing to move for stay relief.

60. Consequently, having only been assigned the mortgage, its only recourse against the Debtor is against the Property. *See In re Pinnock*, 594 B.R. 609 (Bankr. S.D.N.Y. 2018) (if lender lacks standing to enforce the note, its claim should be disallowed for all purposes, including as a secured claim).

**F.     Deutsche Bank's Claim Should be Limited to the Value of Property**

61. Under New York law, a mortgagee's mortgage is a lien against property which entitles the lien holder to an equitable remedy of foreclosure. *See, e.g., Wyoming County Bank & Trust Co. v Kiley*, 430 N.Y.S.2d 900, 903 (Ap. Div. 1980).

62. Furthermore, Bankruptcy Code § 502(b)(1) disallows claims for payment from a debtor's property to the extent such claim for payment is unenforceable against the property. See 11 U.S.C. § 502(b)(1); *In re PCH Associates*, 949 F.2d 585, 604 (2d Cir. 1991) (holding 11 U.S.C. § 502(b)(1) disallows the deficiency claim of a secured creditor who does not have recourse against the debtor); *Cavaliere v. Sapir,* 208 B.R. 784, 786 (D. Conn. 1997*); see also In re 680 Fifth Ave. Associates*, 29 F.3d 95, 97 (2d Cir. 1994) (noting that without the 11 U.S.C. § 1111(b) exception, "under 11 U.S.C. § 502(b)(1), the nonrecourse nature of the loan would otherwise bar a deficiency claim for the unsecured portion of the loan"); H.R. REP. 95-595, 549, 1978 U.S.C.C.A.N. 5963, 6516 (11 U.S.C. § 502(a)(1) "is intended to result in the disallowance of any claim for deficiency by an undersecured creditor or a nonrecourse loan"); see also 11 U.S.C. 101(5)(A)–(B) (defining the term "claim" under Title 11 as a "right to payment").

63. Therefore, Deutsche Bank's only claim in this bankruptcy case is its right to payment through an equitable remedy of foreclosure of the Debtor's Property. *See Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991); *see also Wyoming County Bank & Trust Co.*, 430 N.Y.S.2d at 903.

64. Because Deutsche Bank's only right to payment from the Debtor is its right to the proceeds of a foreclosure sale of the Property, its claim *per force* is limited to the amount of proceeds a foreclosure sale would produce. *See* 11 U.S.C. § 101(5)(A)–(B) (a claim is

only the creditor's right to payment); *Johnson*, 501 U.S. at 84 (a lien holder's "right to payment" is its right to the proceeds of a foreclosure sale).

65. If Deutsche Bank wishes, after a confirmed plan and sale of the Debtors property, to enforce its rights to a deficiency, such enforcement is available against the borrower.

66. Deutsche Bank would have this court believe that its right to enforce its deficiency is vitiated; it is intact, and has always been intact, notwithstanding the Debtor's progress in this bankruptcy.

## **CONCLUSION**

67. Considering the foregoing, the Debtor submits that reconsideration of the Order is necessary to maintain the status quo and prevent manifest injustice that accompanies *in rem* relief under section 363(d)(4) of the Bankruptcy Code. *See generally* 3 COLLIER ON BANKRUPTCY ¶ 362.05[19][a] (noting that requiring a high standard on motions under section 362(d)(4) is consistent with the statute's extreme remedy, which halts the automatic stay from applying to the real property in bankruptcy filings for two years).

**WHEREFORE**, TCN asks this Court to grant this Motion and enter orders, a.) pursuant to Fed.R.Bankr.P. 9023 and 9024 and Rule 9023-1 of this Court's Local Rules granting relief from, modifying and/or amending the Courts Order; and b.) granting such other and further relief as this Court deems proper.

[*signature page follows*]

Dated: New York, New York
March 22, 2023

                                    **JACOBS P.C.**
*Attorneys for the Debtor*

 By:  */s/ Leo Jacobs*
        Leo Jacobs

595 Madison Avenue, 39th Fl.
New York, NY 10022
(212) 229-0476
leo@jacobspc.com